UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALLAN FRED ALTERGOTT, | Case No. 3:15-cv-00159-RCJ-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| SENNA, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is a Motion for Summary Judgment filed by defendants Dawn Jones and Dr. Shannon Sena[1]. (Electronic Case Filing (ECF) No.19.) Plaintiff filed a response (ECF No. 31) and Jones and Dr. Sena filed a reply (ECF No. 34). Plaintiff was granted leave to file a supplemental affidavit in support of his opposition. (*See* ECF Nos. 45, 46, 47.) Jones and Dr. Sena filed a response to Plaintiff's supplemental affidavit. (ECF No. 49.) The court also partially granted Plaintiff's request for further discovery pursuant to Federal Rule of Civil Procedure 56(d), and additional documentation relevant to the dispositive motion was filed by Jones and Dr. Sena. *See* ECF Nos. 48, 51, 52, 53, 53-1.) Plaintiff was granted leave to file a supplemental memorandum addressing this documentation (*see* ECF Nos. 52, 54), and Jones and Dr. Sena filed a response (ECF No. 56).

After a thorough review, the court recommends that the motion for summary judgment be denied.

///

---

[1] Identified by Plaintiff in the complaint as Senna.

# I. BACKGROUND

Plaintiff is an inmate within the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. He alleges that his constitutional rights were violated when he experienced a delay in receiving dental care between December 2012 and March of 2013 while housed at Ely State Prison (ESP) which caused him severe pain and suffering. (ECF No. 5.) The court screened the complaint and allowed Plaintiff to proceed with a claim of deliberate indifference to a serious medical need under the Eighth Amendment against Dr. Sena (the ESP dentist), Georgia Luce (the ESP dental assistant) and ESP Nurse Dawn Jones. (ECF No. 4.)

The Attorney General's Office initially accepted service on behalf of Jones, but not for Dr. Sena or Luce as they were no longer employed by NDOC, and their last known addresses were filed under seal. (ECF Nos. 12, 13.) Plaintiff requested that Dr. Sena and Luce be served at their last known addresses, and the court issued summonses. (ECF Nos. 15, 17, 18, 19, 20.) A motion for summary judgment was then filed on behalf of both Jones and Dr. Sena[2]. (ECF No. 23.) Plaintiff requested additional time to serve Luce, and the court granted this request. (ECF Nos. 32, 33.) It was discovered that the last known address filed under seal for Luce was a post office box; therefore, the court ordered the Attorney General's Office to attempt to obtain Luce's last known *physical* address and file it under seal. (ECF No. 36.) A physical address was eventually located for Luce (*see* ECF Nos. 38, 39), a summons was issued (ECF No. 43), and Luce was served on June 28, 2016 (ECF No. 44). Plaintiff filed two motions for the Clerk's entry of default as to Luce pursuant to Federal Rule of Civil Procedure 55(a) due to Luce's failure to respond or otherwise defend this action (ECF Nos. 55, 57), and the Clerk entered default as to Luce on September 23, 2016 (ECF No. 58).

The court now considers the motion for summary judgment filed by Jones and Dr. Sena, where they argue that there is no evidence they were deliberately indifferent with respect to Plaintiff's dental needs. (ECF No. 23.)

///

---

[2] Dr. Sena was served on March 10, 2016. (ECF No. 27.)

- 2 -

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

1  come forward with evidence which would entitle it to a directed verdict if the evidence went
2  uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing
3  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*
4  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations
5  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or
6  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate
7  an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party
8  failed to make a showing sufficient to establish an element essential to that party's case on which
9  that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-
10 25 (1986).

11       If the moving party satisfies its initial burden, the burden shifts to the opposing party to
12 establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*
13 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of
14 material fact, the opposing party need not establish a genuine dispute of material fact
15 conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a
16 jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,*
17 *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and
18 citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find
19 for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v.*
20 *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot
21 avoid summary judgment by relying solely on conclusory allegations that are unsupported by
22 factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the
23 pleadings and set forth specific facts by producing competent evidence that shows a genuine
24 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

25     That being said,
26 [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give
27 an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion
28

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Facts**

The following facts are undisputed unless otherwise noted:

Dr. Sena was the institutional dentist at ESP during the time in question. (Dr. Sena Decl., ECF No. 23-3 ¶ 3.) On December 18, 2012, Plaintiff sent a kite (a medical request) to the dental department at ESP, stating that he had an exam of his teeth several months prior and it was determined that the enamel on one of his molars on the upper left side of his mouth was wearing down, even though Plaintiff had stressed that there was a hole in that tooth. (ECF No. 24-1 at 2; ECF No. 31 at 32.) He stated that since that exam, he had experienced extreme pain. (*Id*.) He indicated that he had taken about fifteen ibuprofen, but the pain returned when the effect of the medication wore off. (*Id*.) He went on to state that he could not put pressure on or eat on that side of his mouth and was getting minimal sleep. (*Id*.) He asked to be scheduled for an appointment as soon as possible, and for something to alleviate the pain. (*Id*.) Ms. Luce responded on December 19, 2012: "You'll have to be seen, will try to get you in, will send some IBU's out, if you want some." (*Id*. (emphasis original).)

Plaintiff sent another kite to dental on December 20, 2012, stating that it had been seventy-two hours since he last kited, and the pain in his molar had not let up. (ECF No. 24-1 at 3; ECF No. 31 at 33.) He reported that he could not bite down and his surrounding teeth were hurting as well; he felt pressure in the left side of his face and a sharp pain in his left ear; and, he was having difficulty eating and sleeping. (*Id*.) He again requested to be scheduled for an

1  appointment soon. (*Id*.) Ms. Luce responded on December 26, 2012: "we are going to be gone
2  for awhile will schedule you when we return." (*Id*.) She indicated that ibuprofen had been sent.
3  (*Id*.)

4  Plaintiff sent a kite to dental on December 23, 2012, requesting ibuprofen as soon as
5  possible, as well as an antibiotic. (ECF No. 24-1 at 4; ECF No. 31 at 34.) He reported that his
6  pain had been consistent for nearly a week and had not let up, and that he would be anticipating
7  his appointment. (*Id*.) Ms. Luce responded on December 26, 2012: "I'll send out IBU's- It will
8  be awhile we are going to be gone for awhile." (*Id*.)

9  Plaintiff sent a kite on December 26, 2012, stating that he had sent two kites explaining
10 the pain he was experiencing, and another asking for ibuprofen, but he had not received a
11 response. (ECF No. 24-1 at 5; ECF No. 31 at 35.) He reiterated he had been in constant pain and
12 discomfort. (*Id*.) There is a notation on the kite that ibuprofen was sent by medical that day (*id.*),
13 which is confirmed in the medical records (ECF No. 24-1 at 3).

14 Plaintiff also filed an informal level grievance on December 26, 2012 (grievance number
15 2006-29-54764), stating that he had been experiencing extreme and constant pain in one of his
16 molars for nine days, and despite sending four kites to dental he had not been seen by a nurse or
17 prescribed "KOPs" (keep-on-person medication). (ECF No. 23-4 at 9-12; ECF No. 31 at 42-45.)
18 He indicated that he had lost several days of sleep, and sometimes could not eat because he could
19 not chew his food properly or apply pressure to that tooth. (*Id*.) He indicated he had experienced
20 extreme pressure in the left side of his face, sharp pain in his left ear and pain to the surrounding
21 teeth. (*Id*.) He noted that he had only received a response to one of his kites, which stated they
22 would try to get him in and that they would send something for the pain, but neither of those
23 things had occurred. (*Id*.)

24 Ms. Jones responded to the informal level grievance on February 11, 2013: "Mr.
25 Altergott the dental assistant has not been here. Dental will schedule you when she returns. You
26 have received pain packs and antibiotics for your complaint. I am sorry for the delay." (ECF No.
27 23-4 at 13; ECF No. 31 at 46.) Plaintiff filed a first level grievance on February 22, 2013,
28 indicating he was still in pain and the ibuprofen and pain medication only provided minimal

1  relief, and requested treatment. (ECF No. 23-4 at 5-7; ECF No. 31at 47-49.) J. Garner (not a
2  defendant) responded on March 30, 2013, that dental had informed her that it had taken care of
3  Plaintiff, and apologized for the delay and inconvenience. (ECF No. 23-4 at 8; ECF No. 31 at
4  50.) He filed a second level grievance, and the responder (C. Schardin, also not a defendant)
5  agreed with the first level response. (ECF No. 23-4 at 2-3; ECF No. 31 at 51-53.)

6  Plaintiff sent a kite to dental on January 5, 2013, stating that he had been eating on the
7  right side of his mouth since his pain developed, and that a filling had come out on a tooth where
8  he had been chewing his food. (ECF No. 24-1 at 6.) He also indicated that the ibuprofen sent had
9  run out and did little, if anything, to help alleviate his pain. (*Id*.) He asked to be seen. (*Id*.) There
10 was no response to this kite. (*Id*.)

11 On January 14, 2013, Plaintiff complained of severe pain in the upper left side of his
12 mouth. (ECF No. 24-2 at 3.) He was seen by Dr. Sena for a limited examination and it was noted
13 that the number fifteen tooth had a failing "MO" filling. (*Id*.) The treatment plan was as follows:
14 "Pt will be given meds until assistant returns." (*Id*.) Plaintiff was prescribed 24 200mg ibuprofen.
15 (ECF No. 24-2 at 2.)

16 Plaintiff sent a kite to dental on February 10, 2013, where he mentioned his kite of
17 January 5, 2013, which discussed his lost filling, and asked whether dental was aware of the
18 problem since he never received a response. (ECF No. 24-1 at 7; ECF No. 31 at 36.) He reported
19 that he continued to eat on his right side due to the pain on the left side of his mouth, and had
20 two chips in his tooth. (*Id*.) He asked to be seen before the damage became irreparable. (*Id*.) The
21 response stated: "You will be seen when my regular dental assistant returns." (*Id*.)

22 Plaintiff sent a kite to dental on February 15, 2013, indicating he had a bad taste coming
23 from the hole in his molar since he was issued antibiotics on January 14, 2013, and was still
24 experiencing a lot of discomfort and pressure on the tooth. (ECF No. 24-1 at 8.) He asked
25 whether it was infected and whether the infection could spread to other parts of his body. (*Id*.)
26 There was no response to this kite. (*Id*.)

27 Plaintiff sent a kite on March 10, 2013, stating that he was called by dental on March 4,
28 2013, and asked if he still wanted to see the dentist, and again on March 8, 2013, to see if his

1    tooth was still giving his problems. (ECF No. 24-1 at 9.) He said the answer to both questions
2    was yes, and reiterated that he had been seeking treatment since December 17, 2012. (*Id*.) In
3    addition, he reported a bump on the top of his gums over the tooth that was giving him trouble,
4    which hurt, and was still experiencing the bad taste coming from the hole in his tooth that he
5    mentioned in his February 15, 2013 kite. (*Id*.) There was no response to this kite. (*Id*.)

6        On March 11, 2013, he complained of pain in the upper left side of his mouth; he was
7    seen for a limited examination, and was diagnosed with root decay and failing restorations in the
8    number fourteen and number fifteen teeth. (ECF No. 24-2 at 4.) Slight swelling and sinus tract
9    were noted. (*Id*.) He was to be placed on medication and brought back for "exts" (presumably
10   extractions). (*Id*.) Plaintiff was prescribed Clindamycin (antibiotic) and 24 200mg ibuprofen. (*Id.*
11   at 2, 4.) The treatment description says "Limited exam + DA today[.]" Plaintiff claims that "DA"
12   refers to the dental assistant. Defendants disagree, but offer no other explanation was to what the
13   DA designation refers.

14       Plaintiff contends that Luce was present for this examination, but Dr. Sena still did not
15   extract the affected teeth. (ECF No. 31 at 9, 97 ¶ 4.) The court partially granted Plaintiff's
16   request for discovery pursuant to Federal Rule of Civil Procedure 56(d), and Defendants
17   produced Ms. Luce's time cards for the period at issue. (ECF No. 53-1.) The time records reflect
18   that Ms. Luce returned full time on February 25, 2013. (ECF No. 53-1 at 2.) They further reflect
19   that Ms. Luce was working on March 11, 2013. (ECF No. 53-1 at 3.)

20       On March 19, 2013, Plaintiff was seen by Dr. Sena and diagnosed with non-restorable,
21   decayed and crooked teeth at numbers fourteen and fifteen. (ECF No. 24-2 at 4.) The teeth were
22   extracted. (*Id*.) Plaintiff was prescribed 24 200mg ibuprofen. (ECF No. 24-2 at 2.)

23       Plaintiff filed another informal level grievance on September 6, 2013 (grievance 2006-
24   29-67063), stating that he suffered the loss of two molars on March 19, 2013, when he had been
25   complaining about pain in one molar since December 18, 2012. (ECF No. 23-5 at 10-12, 14-17;
26   ECF No. 31 at 54-56, 58-61.) He also stated that when he was seen on March 11, 2013, he
27   learned for the first time he suffered from root decay, and that the infection had spread to the
28   molar next to the tooth that had been giving him problems. (*Id*.) Jones responded on September

30, 2015: "You were seen in July and had nothing wrong with your teeth at that time. You were seen on 3/11/13 and given medicine for sinus track swelling and rescheduled for extraction of two teeth. Both teeth were extracted on 3/19/13. Decay does not spread from tooth to tooth." (ECF No. 23-5 at 13; ECF No. 31 at 57.) In his first level grievance, Plaintiff acknowledged that he was seen on March 11, 2013, and given medication for the infection, and rescheduled for the extraction, but highlighted that this was three months after he initially requested medical attention. (*See* ECF No. 23-5 at 6-7; ECF No. 31 at 62-64.) J. Garner responded to the first level grievance: "I spoke with the dental department and Ms. Luce informed me that you lost the 2 teeth due to infection and decay...normal treatment in this case. If you have any further dental issues please kite dental to be seen." (ECF No. 23-5 at 9; ECF No. 31 at 65.) He filed a second level grievance setting forth his position that he should not have had to wait three months for treatment without medication to sufficiently relief his pain, and that the infection developed while he was waiting for treatment. (ECF No. 23-5 at 3-5; ECF No. 31 at 66-68.) R. Aranas responded to the second level grievance, which agreed with the first level response. (ECF No. 23-5 at 3; ECF No. 31 at 69.)

**B. Eighth Amendment**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

1  condition that significantly affects an individual's daily activities; or the existence of chronic and
2  substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131
3  (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was
4  wired shut for several months demonstrated a serious medical need).

5       If the medical need is "serious," the plaintiff must show that the defendant acted with
6  deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation
7  omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,
8  1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or
9  even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action
10 under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present
11 when a prison official "knows of and disregards an excessive risk to inmate health or safety; the
12 official must both be aware of the facts from which the inference could be drawn that a
13 substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,
14 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).
15 Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally
16 interfere[s] with medical treatment, or it may be shown by the way in which prison officials
17 provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal
18 quotation marks and citation omitted). "'[A] prisoner need not prove that he was completely
19 denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*,
20 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other*
21 *grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical
22 treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*,
23 974 F.2d at 1060.

24 **C. Analysis**

25      While they did not raise it initially in their motion for summary judgment, Defendants
26 argue in their reply brief that Plaintiff did not suffer from a serious medical need. (ECF No. 34 at
27 3.) They point to the canteen receipts they produced indicating that Plaintiff continued to order
28 chips, cookies and candy during the time period he claims he was in pain and had trouble eating.

- 10 -

1  (ECF No. 34 at 3; ECF No. 23-7.) Plaintiff claims he did not consume the sweets himself, that he
2  would eat chips but only when he got Top Ramen too, and was able to add hot water to soften
3  the food (ECF No. 31 at 97 ¶ 4), and in any event, he claims he was only able to chew on one
4  side of his mouth. In addition, Defendants' argument ignores the fact that the record is replete
5  with evidence of Plaintiff's complaints of pain while he was waiting for dental treatment. *See*
6  *McGuckin*, 974 F.2d at 1059-60 ("existence of chronic and substantial pain" indicates that a
7  prisoner's medical needs are serious); *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014)(en
8  banc) (citation omitted), *cert. denied*, 135 S.Ct. 946 (Jan. 12, 2015) (acknowledging that "delay
9  as short as three months in receiving necessary dental care can create a genuine issue of material
10 fact"). There is, at a minimum, evidence to create a genuine dispute of material fact as to whether
11 Plaintiff suffered from a serious medical need.

12 The court must now consider the deliberate indifference prong of the Eighth Amendment
13 claim.

14 Defendants admit there was a delay in providing treatment for Plaintiff's dental problem.
15 (ECF No. 23 at 7:18.) They argue, however, that in order to establish liability for a delay in the
16 receipt of medical treatment, a plaintiff must demonstrate that substantial harm resulted from the
17 delay, and maintain there is no evidence this was the case. (ECF No. 23 at 7.) They claim that
18 they did not ignore Plaintiff's complaints, but that Ms. Luce was not present at the time Plaintiff
19 was complaining of dental pain. (*Id*.) In addition, Dr. Sena contends that he saw Plaintiff for two
20 limited examinations and prescribed Plaintiff pain medication and antibiotics while Plaintiff was
21 waiting for his appointment to have the tooth extracted so it cannot be said that Plaintiff's
22 complaints were ignored. (*Id*. at 7-8.)

23 Defendants' claim that there is no evidence that Plaintiff failed to suffer further injury as
24 a result of the delay in providing dental treatment is belied by the record. Plaintiff's kites and
25 grievances indicated he continued to suffer in extreme pain while he was waiting for treatment,
26 and that while he was prescribed ibuprofen it "did little, if anything" to relieve his pain.
27 Additionally, while he was given an antibiotic, he subsequently reported a bad taste coming from
28

the tooth and it is acknowledged that the teeth were ultimately removed due to decay *and infection*.

Defendants rely on *Peralta*, arguing that they are absolved of liability because Dr. Sena was constrained by not having a dental assistant to help him with procedures. (ECF No. 23 at 8.) According to Dr. Sena, there were several times during his employment at ESP that he was without a dental assistant or appropriate staff to be able to physically treat dental patients, and on these occasions medications were prescribed, including antibiotics and pain killers to alleviate symptoms until they could be seen, which was the case for Plaintiff. (Sena Decl., ECF No. 23-3 ¶¶ 6-8.) Dr. Sena claims he was not responsible for scheduling patients to be seen by dental, and if his dental assistant was sick or on leave, he was unable to treat patients or conduct procedures as he had no control over personnel. (*Id*. ¶ 9.)

In *Peralta*, the Ninth Circuit concluded that it was proper for the district court to instruct the jury to consider the personnel, financial and other resources available to the defendant in determining liability for deliberate indifference to a serious medical need under the Eighth Amendment, and that lack of resources may be a defense to a claim for damages (but not prospective relief). *Peralta*, 744 F.3d at 1082-84. In *Peralta*, the record contained evidence that the ratio of dentists was "less than half what the state said it should be, there were no office technicians or dental hygienists and, on many occasions, [the dentist] had no dental assistant." *Id*. at 1082. The dentist there had no control over the budget, and in turn, no control over those constraints.

Here, insofar as Dr. Sena claims he had no control over scheduling, as Plaintiff points out, NDOC Administrative Regulation (AR) 631 provides that the institutional dentist "will supervise and evaluate the clinical work of the Dental Assistant, including (but not limited to) scheduling of appointments..." (ECF No. 31 at 74, AR 631.01.1.C(1).) AR 631 goes on to provide that "[d]ental service should be timely, and include arrangements for handling urgent and emergent conditions." (ECF No. 31 at 74, AR 631.01.2.)

With respect to Dr. Sena's claim that he cannot be held liable because he was without a dental assistant, as Plaintiff also points out, AR 432 provides that medical staff are responsible

1  for "hav[ing] procedures to ensure that inmates who are in need of medical care, *beyond the*
2  *resources available in the institution,* as determined by the Health Care Professional or Mid-
3  Level Practitioner, *receive the needed care*." (ECF No. 31 at 93 (emphasis added).) Plaintiff
4  references instances where other inmates were transferred to another institution on a "treat and
5  return" basis to receive dental care.

6        Moreover, while Dr. Sena states that he was without a dental assistant at times, the record
7  reflects that Ms. Luce returned full time from leave on February 25, 2013 (ECF No. 53-1 at 2),
8  and that Ms. Luce was working when Plaintiff received a limited examination from Dr. Sena on
9  March 11, 2013 (ECF No. 53-1 at 3), yet Plaintiff's teeth were not extracted until March 19,
10  2013.[3]

11        Defendants argue that the delay in extracting the teeth from March 11, 2013, to
12  March 19, 2013, amounts to a "disagreement over the choice of treatment," and that Plaintiff has
13  not presented evidence that this delay caused him substantial harm. (ECF No. 56 at 2-3.) Once
14  again, this argument ignores Plaintiff's claims that he continued to be in extreme pain while
15  waiting for the teeth to be extracted. While Dr. Sena maintains that he prescribed Plaintiff
16  ibuprofen and an antibiotic while he was waiting for treatment, Plaintiff made Dr. Sena aware
17  that the ibuprofen was not alleviating his pain. This is in contrast to *Peralta* where Peralta was
18  prescribed ibuprofen and testified that it *did* help to alleviate his pain. *Peralta*, 744 F.3d at 1084.

19        In sum, the court finds that Plaintiff has pointed to evidence in the record that creates a
20  genuine dispute of material fact as to whether Defendants were deliberately indifferent when his
21  dental treatment was delayed from December 2012 until March 19, 2012.

22        Finally, Jones argues that Plaintiff cannot demonstrate that she caused him actual injury
23  as a grievance responder. (ECF No. 23 at 9-10.) She characterizes her grievance response as
24  "simply the opinion of the NDOC as to the merits of [Plaintiff's] claims." (ECF No. 23 at 10:2-

---

[3] Defendants' summary judgment brief stated that Plaintiff was seen by Dr. Sena on March 11, 2013, for a limited exam due to the fact that his dental assistant had not returned. (ECF No. 23 at 3.) Their reply brief reiterated their position that Ms. Luce was not present during the limited exam on March 11, 2013. (ECF No. 34 at 4.) After the court granted Plaintiff's request to conduct limited discovery related to Ms. Luce's leave pursuant to Federal Rule of Civil Procedure 56(d), Defendants indicated in their supplemental brief that they were withdrawing the argument that Dr. Sena could have performed the necessary procedure if Ms. Luce were present on March 11, 2013. (ECF No. 56 at 2 n. 1.)

1  3.) She argues that she did not provide treatment or respond to Plaintiff's kites, did not have any
2  personal involvement in Plaintiff's dental care or treatment, and had no control over the
3  availability of a dental assistant. (ECF No. 23 at 10.)

4  As Plaintiff aptly points out, the grievance process is described by NDOC's own
5  regulation as a mechanism for the prison to *resolve* inmate problems and concerns. (*See* ECF No.
6  31 at 77, AR 740.1, stating that inmate grievance process should provide "an appropriate and
7  substantial response to an inmate's claim, as well as an administrative means for the expression
8  of, and prompt and fair resolution of, inmate problems and concerns"; AR 740.08.1: "Grievance
9  remedies should be determined with the goal of appropriately resolving legitimate claims at the
10 lowest level of review possible"). The charging nurse at the institution is responsible for
11 addressing informal level grievances concerning dental issues. (ECF No. 31 at 79, AR
12 740.05.2.E.)

13 In *Peralta*, the chief medical officer signed Peralta's second level appeal. He was not a
14 dentist and did not independently review Peralta's claims, but relied on the medical opinions of
15 staff dentists. *Peralta*, 744 F.3d at 1086. Under these circumstances, the Ninth Circuit concluded
16 he was not deliberately indifferent. *Id*. Dillard, who was a staff dentist, was supposed to have
17 signed Peralta's second level appeal, but did not. Nor did Dillard review Peralta's records, and
18 there was no evidence he was aware of Peralta's complaints or participated in his treatment. *Id*.
19 Based on these facts, the Ninth Circuit likewise concluded Dillard was not deliberately
20 indifferent.

21 Unlike the second level appeal responders in *Peralta*, under AR 740, the charging nurse
22 assigned to a grievance is required to *investigate* and respond to the informal level grievance.
23 (ECF No. 31 at 85, Operational Procedure (OP) 723.) From the grievance, Jones was aware of
24 Plaintiff's complaints of pain, but only advised that he would be scheduled when the dental
25 assistant returned. Given NDOC regulations' statement that medical staff are responsible for
26 assuring that inmates who are in need of care beyond the resources available at their particular
27 institution receive the necessary care, there is evidence sufficient to defeat the motion for
28 summary judgment insofar as Jones is concerned.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** the motion for summary judgment filed by defendants Jones and Dr. Sena.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: September 28, 2016.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE